1

2                                                    **E-Filed 5/19/10**

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                              SAN JOSE DIVISION

9

10    IN RE:                                    District Court Case No. C 09-4853 JF

      SONIC BLUE INCORPORATED, a Delaware       Chapter 11 Case No. 03-51775 MM
11    corporation; et al.,                      (Case Nos. 03-51775 through 03-51778)
                                                (Jointly Administered)
12                          Debtors.
                                                Adv. Proc. No. 09-05270
13    _____
                                                **ORDER[1] GRANTING IN PART,
14    DENNIS J. CONNOLLY, Plan Administrator for   DENYING IN PART, AND
      SONICblue Incorporated,                      DEFERRING IN PART
15                                                 PLAINTIFF'S MOTION FOR
                            Plaintiff,             SUMMARY JUDGMENT;
16                                                 GRANTING OLD REPUBLIC
            v.                                     INSURANCE COMPANY'S
17                                                 MOTION FOR PARTIAL
      ADMIRAL INSURANCE COMPANY and OLD            SUMMARY JUDGMENT; AND
18    REPUBLIC INSURANCE COMPANY,                  DENYING ADMIRAL INSURANCE
                                                   COMPANY'S MOTIONS TO
19                          Defendants.            DISMISS AND FOR PARTIAL
                                                   SUMMARY JUDGMENT**
20
                                                [re: docket nos. 4, 17, 22, 27]
21

22

23         Defendant Admiral Insurance Company ("Admiral") moves to dismiss Plaintiff's

24    complaint for lack of jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Plaintiff Dennis Connolly, plan

25    _____

26         [1] This disposition is not designated for publication in the official reporter.

27    Case No. C 09-4853
      ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
      SUMMARY JUDGMENT, ETC.
28    (JFLC3)                                    1

1  administrator for SONICblue Incorporated ("Plaintiff"), Defendant Old Republic Insurance

2  Company ("Old Republic"), and Admiral each move for partial summary judgment.  The Court

3  has considered the moving and responding papers and the oral argument of counsel presented at

4  the hearing on April 9, 2010.  For the reasons discussed below, Plaintiff's motion will be granted

5  in part, denied in part, and deferred in part; Old Republic's motion will be granted; and

6  Admiral's motions dismiss will be denied.

7  ### I. Background

8  The relevant facts are undisputed.  The following summary is taken from Plaintiff's

9  motion, which is both echoed in and cited by Defendants in their moving papers:[2]

10  In 2002, SONICblue purchased a Directors' and Officers' Liability
    Insurance Policy (the "Primary Policy") from Admiral . . . providing $5 million
11  worth of coverage.  As a premium for the Primary Policy, SONICblue paid a gross
    amount of $750,000 to its insurance broker, Technology Insurance Services, of
12  which a net amount of $630,000 (subtracting commissions) was paid to Admiral.
    *See* Declaration of Sandy Osgood in Support of Plan Administrator's Motion for
13  Summary Judgment ("Osgood Declaration"), ¶¶ 3–4.  SONICblue also purchased
    an Excess Directors' and Officers' Liability and Reimbursement Coverage Policy
14  (the "Excess Policy") from Old Republic . . . , providing excess coverage of $5
    million.  As a premium for the Excess Policy, SONICblue paid a gross amount of
15  $585,000, of which a net amount of $497,250 was paid to Old Republic.  See
    Osgood Declaration, ¶¶ 3–4.
16  On March 21, 2003, SONICblue and three of its subsidiaries filed petitions
    for relief under chapter 11 of the Bankruptcy Code.  ["Once SONICblue filed
17  bankruptcy, the automatic stay imposed under section 362(a)(3) of the Bankruptcy
    Code issued."  (Admiral's Cross-Mot. for Part. Summ. J. 2.)]  Two years later, on
18  April 21, 2005, a group of SONICblue creditors (the "Bondholders") filed a
    lawsuit (the "Underlying Action") (originally in the Santa Clara Superior Court,
19  but the case was later removed to the Bankruptcy Court) against a group of
    SONICblue directors and officers (the "D&O Defendants") alleging breach of
20  fiduciary duty and constructive fraud and seeking up to $50 million in damages.
    [citation omitted]  Later that year, on December 23, 2005, Admiral and Old
21  Republic filed an adversary complaint (the "Coverage Action") against
    SONICblue and the D&O Defendants, seeking to establish that they had no
22  obligation to provide insurance coverage under their respective D&O Policies in
    connection with the Underlying Action.  [citation omitted]  Among the asserted
23  grounds for relief were claims for "Rescission of the Primary Policy" and
    "Rescission of the Excess Policy."  [citation omitted]  ["By the Coverage Action,
24  Old Republic [and Admiral] sought to resolve issues of coverage and/or to reform

25

26  [2]Where indicated with brackets, the Court has made modifications for brevity and clarity.

27

1    or, in the alternative, rescind the [Primary and Excess Policies] as to the [D&O
     Defendants]."  (Old Republic's Cross-Mot. for Summ. J. ("MSJ") 2.)]

2    ["SONICblue was named as a defendant in the Coverage Action and was made
     aware of the action but requested that it not be served with the carriers' Complaint

3    so as to preserve the SONICblue estate's assets, and in fact SONICblue did not
     participate in the Coverage Action."  (Admiral's Cross-Mot. for Part. Summ. J. 3

4    (footnote omitted).)]

5        In support of their claims for rescission of the Primary and the Excess
     Policies, Admiral and Old Republic alleged that the D&O Defendants failed to

6    disclose certain relevant communications in the policy application; that Admiral
     and Old Republic reasonably relied on the misrepresentations and/or omissions;

7    that the non-disclosures were material to Admiral and Old Republic; that Admiral
     and Old Republic were "ready, willing and able to return to SONICblue" the

8    Primary and Excess Policy premiums; and that the Primary and Excess Policies
     should therefore be rescinded. [citation omitted]

9        In 2007, a settlement [of the Underlying Action] was reached among the
     Bondholders, the D&O Defendants, and Admiral and Old Republic, pursuant to

10   which: (a) certain consideration was to be paid contingent on the outcome of the
     Coverage Action; (b) the Bondholders substituted into the Coverage Action in

11   place of the D&O Defendants; and (c) Old Republic dismissed its claims, leaving
     Admiral as the plaintiff [in the Coverage Action].  [citation omitted]

12       Th[is] Court withdrew the reference of the Coverage Action (Case No.
     C07-4185 JF) [citation omitted] and both sides filed motions for summary

13   judgment.  On May 28, 2009, in response to a request by the District Court for
     supplemental briefing, Admiral argued that it was "entitled to rescind the policy

14   with the reimbursement to SONICblue of its premium for the Policy." Admiral
     Insurance Company's Supplemental Brief in Response to the Court's Summary

15   Judgment Order [] 8.  It stated that it remained "ready, willing and able to repay to
     SONICblue's Administrator the full amount of the premium paid to Admiral by

16   SONICblue, for the benefit of its creditors." *Id.* at 7.  It invited the [C]ourt to
     "grant Admiral's motion for summary judgment, rescind the Admiral Policy, and

17   in doing so, provide the only form of relief in this case that provides any benefit to
     SONICblue's estate." *Id.* at 8.

18       On August 14, 2009, the [] Court granted summary judgment in favor of
     Admiral, finding that it was entitled to rescind its policy.  The [C]ourt found that

19   material facts were omitted from the policy application, and that rescission was
     therefore warranted:

20            "When a policyholder conceals or misrepresents a material
          fact on an insurance application, the insurer is entitled to rescind

21        the policy." *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins.
          Co.*, 156 Cal. App. 4th 1259, 1266 (2007).  Accordingly, Admiral's

22        motion for summary judgment on its claim for rescission will be
          granted.

23
     [*Admiral Insurance Co. v. SONICblue, Inc.*, No. C07-4185 JF, 2009 WL

24   2512197, at *7 (N.D. Cal. Aug. 14, 2009).]

25       On September 14, 2009, Plaintiff Dennis J. Connolly (who was appointed
     Chapter 11 Trustee for SONICblue on April 17, 2007, and is currently Plan

26   Administrator under a plan confirmed on December 4, 2008) demanded return of

27   Case No. C 09-4853
     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT, ETC.

28   (JFLC3)                                    3

1   the Primary and Excess Policy premiums from Admiral and Old Republic.
    [citation omitted] . . .
2              Admiral and Old Republic refused to return the premiums, in whole or in
    part. [citation omitted] . . . Plaintiff accordingly filed the present lawsuit [on
3   October 7, 2009, seeking restitution of the premiums SONICblue paid under the
    Primary and Excess Policies and the interest thereon].
4

5   (Pl.'s Mot. for Summ. J. 2-5.)

6          At a case management conference in the Coverage Action held on October 30, 2009, the

7   Bondholders contended that the order granting summary judgment did not dispose of the

8   question of whether reformation of the contract was a more appropriate remedy.  The Court

9   ordered the parties to the Coverage Action to submit additional briefing with respect to this issue.

10  After considering the parties' supplemental briefing, the Court concluded that rescission was the

11  appropriate remedy and entered judgment for Admiral in the Coverage Action.  *Admiral Ins. Co.*

12  *v. SONICblue, Inc.*, No. C07-4185 JF, 2010 WL 1266675 (N.D. Cal. April 1, 2010); *see also*

13  Case No. C07-4185 JF at Doc. Nos. 69-70.

14                                    **II.  Legal Standards**

15  **A.      Motion to Dismiss Under Rule 12(b)(1)**

16         A motion to dismiss is proper under Rule 12(b)(1) where the Court lacks jurisdiction over

17  the subject matter of the complaint.  Fed. R. Civ. P. 12(b)(1).  The court presumes a lack of

18  subject matter jurisdiction until the plaintiff meets her burden establishing subject matter

19  jurisdiction.  Fed. R. Civ. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

20  375, 378 (1994).  The non-moving party must support its allegations with competent proof of

21  jurisdictional facts when a party moves for dismissal under Rule 12(b)(1).  *See Thomson v.*

22  *Gaskill*, 315 U.S. 442, 446 (1942).

23  **B.      Motions for Summary Judgment**

24         A motion for summary judgment should be granted if there is no genuine issue of

25  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

26

27  Case No. C 09-4853
    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT, ETC.
28  (JFLC3)                                      4

56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that might affect the outcome of the case under the governing law.  *Id.* at 248.  There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing that there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

The evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  Summary judgment thus is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the material issue in its favor.  *Liberty Lobby*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III.  Discussion

The four instant motions involve largely overlapping legal questions.

**A.      Timing of the Rescission of the Primary and Excess Policies**

Plaintiff's motion for summary judgment is based upon his contention that Defendants rescinded the Primary and Excess Policies as a matter of law by instituting the Coverage action in December 2005.  Plaintiff argues that since 1961, California law has recognized only unilateral

rescission and no longer recognizes judicial rescission.  Unilateral rescission is "accomplished by giving notice of the rescission, *see* [Cal. Civil Code] § 1691(a), and restoring or offering to restore to the other party any value received, *see* § 1691(b)."  (Pl.'s MSJ 6.)  Alternatively, Section 1691 provides that "[w]hen notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both."

### 1.    Rejection of Rescission

Admiral argues that the filing of the complaint did not effectuate a "complete" rescission because SONICblue did not accept Admiral's offer to rescind.  Relying upon Section 1691's requirement that the party seeking rescission must give notice and "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same *upon condition that the other party do likewise*, unless the latter is unable or positively refuses to do so,"  Cal. Civil Code § 1691(b) (emphasis added), Admiral contends that rescission is not complete until "a court determines the rescinding party's right to rescind" when the offer to rescind is either rejected or is not affirmatively accepted.  (Admiral's Opp'n to Pl.'s MSJ 5.)[3] Admiral also relies upon *Maniar v. Capital Bank of California*, No. C-89-2774 MHP, 1993 WL

_____

[3]This argument also serves as a basis for Admiral's motion to dismiss for mootness and for its cross-motion for partial summary judgment.  However, since Admiral filed its motions, the Court issued its judgment in the Coverage Action concluding that rescission was the appropriate remedy.  *See Admiral Ins. Co. v. SONICblue, Inc.*, No. C07-4185 JF, 2010 WL 1266675 (N.D. Cal. April 1, 2010); *see also* Case No. C07-4185 JF at Doc. Nos. 69-70.

Admiral also argues in its motions and in opposition to Plaintiff's motion that the instant action will not be ripe until the judgment in the Coverage Action has survived all appeals.  This argument is without merit.  The case Admiral cites for its position, *Cheng v. C.I.R.*, 878 F.2d 306, 311 (9th Cir. 1989), is easily distinguishable.  The Ninth Circuit held in that case that the order being appealed "d[id] not conclusively end the litigation on the merits."  *Cheng*, 878 F.2d at 310.  Here, the judgment ended litigation on the merits in the Coverage Action.  Accordingly, Admiral's motion to dismiss will be denied.

515880 (N.D. Cal. Dec. 6, 1993).  In that case, the plaintiff purchased a thoroughbred race horse in exchange for a $550,000 note.  *Maniar*, 2010 WL 1266675, at *1.  Slightly more than a year later, the plaintiff informed the note holder that he was rescinding the contract and offered to give the horse back in exchange for return or cancellation of the note.  *Id.*  After the original seller refused to return or cancel the note, the plaintiff filed an action in state court to effectuate the rescission and for relief on additional claims.  *Id.* at *1-2.  Following removal, the plaintiff and the Federal Deposit Insurance Corporation ("FDIC"), the note holder at the time, both moved for summary judgment.  *Id.* at *1.  In granting the FDIC's motion for summary judgment as to the plaintiff's claims and as to the FDIC's cross-complaint, Judge Patel held that

> Maniar properly attempted unilateral rescission by providing VSB notice of his intent to rescind, offering to return the horse, and requesting cancellation of the Note.  [footnote omitted]  Upon VSB's rejection of the offer, Maniar correctly filed suit to effectuate the rescission.  However, the rescission was incomplete at this juncture; the Note was not void but merely voidable, i.e., subject to rescission.  . . . If the court were to proceed to the merits of Maniar's claim for relief based upon his unilateral rescission, the possibility remains that the court may find insufficient grounds for rescission under section 1689(b) and conclude that the contract has in fact not been rescinded.  Thus, the rescission is not irrevocable and the contract is not void until the court's final determination.

*Id.* at *3.  Admiral contends that as was the case in *Maniar*, none of the parties to the Primary Policy accepted Admiral's offer to return the net premium and effectuate the rescission, nor has SONICblue offered "to restore to Admiral, or to set-off against its inchoate premium-reimbursement claim."  (Admiral's Opp'n to Pl.'s MSJ 6.)

Also relying on *Maniar*, Old Republic argues that it effectively withdrew any rescission effected by the initiation of the Coverage Action by settling and dismissing its claim in 2007.  According to Old Republic, Plaintiff's theory would mean that "a rescinding party could accomplish a final, irrevocable rescission by first filing a complaint and then voluntarily dismissing it.  Such a process is inconsistent with California's statutory scheme.  As *Maniar* holds, California state law requires either agreement between the contracting parties and/or a

1   court's final determination of rescission."  (Old Republic's Opp'n & Cross-MSJ 11.)

2       Plaintiff argues that the Court should not follow *Maniar* as "the definitive statement of

3   California law on the irrevocability of unilateral rescission under current law."  (Pl.'s Opp'n to

4   Cross-Motions 8.)  Plaintiff maintains that one of the principal cases relied upon by Judge Patel–

5   *Mackenzie v. Voelker*, 123 Cal. App. 2d 536, 541 (Cal. Ct. App. 1954)–is irrelevant because it

6   involves a claim for *judicial* rescission, which was abolished in 1961 when the California

7   Legislature amended the Civil Code.  Another case cited by Judge Patel–*Karapetian v. Carolan*,

8   83 Cal. App. 2d 344, 355 (Cal. Ct. App. 1948)–recognized that under California law a unilateral

9   rescission is "effective" upon notice and offer.  Plaintiff claims that *Karapetian* does not stand

10  for the proposition that a court order is needed to make unilateral rescission effective.  Rather,

11  Plaintiff contends, the court addressed the irrevocability of a party's unilateral rescission where

12  the opposing party attempts to prevent the rescission from becoming "effectual," another issue

13  affected by the 1961 amendments:

14          The *Karapetian* court was concerned with protecting the right of a rescinding
            party to seek damages in the event that the rescission is made "ineffectual" by the
15          other side's noncooperation (see, footnote 7).  That was in 1948.  As part of the
            1961 amendments, the California legislature specifically provided that in an action
16          seeking to enforce a unilateral out-of-court rescission, a party is not precluded
            from seeking damages, either in the alternative or in conjunction with relief based
17          on rescission.  *See* Cal. Civ. Code § 1692 [quotation of statute omitted].
            *Karapetian*'s concerns about keeping the door open to a damages claim in the
18          event of "ineffectual" rescission has [sic] therefore been obviated.

19  (Pl.'s Opp'n to Cross-Motions 8.)

20      Plaintiff draws the Court's attention to another case from this district, *Atmel Corp. v. St.*

21  *Paul Fire & Marine*, 426 F. Supp. 2d 1039 (N.D. Cal. 2005), in support of his interpretation of

22  *Maniar*.  In that case, the plaintiff relied on *Maniar* to support its argument that the defendant

23  insurer who rescinded the plaintiff's policy "had a duty to defend unless and until a court

24  enforced its rescission of the policy."  *Atmel*, 426 F. Supp. 2d at 1045.  Judge Illston found

25  plaintiff's reliance on *Maniar* "unavailing" because

26

*Maniar* simply holds in a situation where the non-rescinding party objects to a rescission–as is the case here–the rescission is not finalized and may be set aside as improper by a court.  As in *Maniar*, this Court may later conclude that St. Paul's rescission of the policy was improper, and at that time the Court would set aside the rescission and determine the parties' rights and obligations under the policy.

*Id.* at 1046.  Plaintiff argues that *Atmel* properly limits *Maniar* and that "[h]ere, too, if a court were to determine that Admiral's and Old Republic's rescission of SONICblue's policies was improper, it would be empowered to set aside the rescission.  Otherwise, the rescission is and remains effective."  (Pl.'s Opp'n to Cross-Motions 8.)

Admiral contends that "*Maniar*'s discussion concerning when rescission is complete is relevant and on point to the issues before the Court" and that Plaintiff's "attempts to undercut [*Maniar*] fail."  (Admiral's Reply ISO Cross-MSJ 3-4.)  Admiral also claims that Plaintiff mischaracterizes Judge Illston's decision in *Atmel* and argues that "*Atmel* recognizes the need for court adjudication on whether grounds for rescission exist before rescission can be made effective."  (*Id.* at 4.)

This Court concludes that Plaintiff's interpretation of California law is correct.  The Ninth Circuit addressed this issue several years after *Maniar* was decided.  In *Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998), it affirmed a district court's ruling that a musical group's rescission of its contract to sell the rights to one of its songs was effective on the date the group filed its complaint in federal court for rescission:

> Under California law, "a party to a contract [can] rescind it and . . . such rescission [can] be accomplished by the rescinding party by giving notice of the rescission and offering to restore everything of value which [the rescinding party has] received."  *Runyan v. Pacific Air Indus.*, 2 Cal.3d 304, 311, 85 Cal.Rptr. 138, 466 P.2d 682 (1970); *see also id.* at 311-13, 85 Cal.Rptr. 138, 466 P.2d 682.  When a party gives notice of rescission, it has effected the rescission, and any subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission.  *See id.* at 311-12, 85 Cal.Rptr. 138, 466 P.2d 682.  Thus, when the Kingsmen filed suit in 1993, they rescinded the contract and became owners of the [rights to the group's song].  The lawsuit that followed confirmed that their rescission was a proper one and resulted in an order enforcing that rescission.  The district court correctly ruled that, as the owners of the [rights to the group's song],

1    the Kingsmen are entitled to all income derived from the exploitation of the

2    recordings following September 29, 1993, the date of the notice of rescission.

3    *Peterson*, 140 F.3d at 1322-23.  Accordingly, under *Peterson*, because the Court concluded in the

4    Coverage Action that the rescission of the Primary Policy was proper, that policy is deemed

5    rescinded as of the filing of the Coverage Action in 2005.

6         While the Excess Policy also was rescinded upon the filing of the Coverage Action, the

7    2007 settlement agreement pursuant to which Old Republic dismissed its claims in the Coverage

8    Action with prejudice altered the relationship of the parties to that policy.  Plaintiff contends that

9    Old Republic did not withdraw its rescission through the settlement agreement but instead

10   "expressly reserved its rescission."  (Pl.'s Opp'n to Cross-MSJ 5.)  Plaintiff relies upon a section

11   of the settlement, which he filed under seal in this case, that provides for arbitration of Old

12   Republic's coverage defenses in the event two specific conditions are satisfied.  (*See* Stipulation

13   for Judgment, Ex. A.)  Old Republic argues that this section does not support Plaintiff's

14   argument but rather "further buttresses Old Republic's position that the Coverage Action has had

15   and will have no binding effect as to the validity of the [Excess] Policy."  (Old Republic Reply

16   ISO Cross-MSJ 6.)

17        The Court concludes that Old Republic effectively withdrew its rescission of the Excess

18   Policy.  Under the 2007 settlement, both Old Republic and SONICblue (and its directors and

19   officers) received significant consideration.  That consideration included dismissal of Old

20   Republic's claims in the Coverage Action with prejudice.  To enforce rescission of the Excess

21   Policy now would frustrate both the purpose of the 2007 settlement and the policy of the

22   California and federal courts favoring out-of-court agreements.

23

24

25

26

27   Case No. C 09-4853
     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT, ETC.
28   (JFLC3)                                    10

1          **2.     Effect of the Bankruptcy Stay[4]**

2          Admiral argues that rescission of the Primary Policy could not be completed without

3   court approval of the rescission in the Coverage Action, which was stayed by the bankruptcy

4   court.  It claims that as a result of the stay SONICblue "could not, and cannot now, return to

5   Admiral the benefits that it received under the Admiral Policy–the funding of the D&Os'

6   defense–because the [Primary] Policy was at least arguably part of the bankruptcy estate."  (*Id.* at

7   7 (citing 11 U.S.C. § 541(a)(1)).)

8          Plaintiff contends that Admiral's argument is "problematic" because while Admiral

9   "clearly want[s] to retain the benefit of having rescinded against the director and officer

10  insureds[,] [it] do[es]n't want the rescission upset in its entirety because then [it] ha[s]to pay the

11  sums to the claimants set forth in the settlement agreement [of the Underlying Action]."  (Pl.'s

12  Opp'n to Cross-Motions 4.)  Plaintiff argues that this result is impossible because under

13  California Insurance Code Section 650 a rescission of an insurance policy applies to all insureds.

14  As a result, if Admiral's position is that the stay rendered the rescission of the Primary Policy

15  ineffective as to SONICblue, it also rendered it ineffective as to the directors and officers.

16  Plaintiff claims that Admiral "have it both ways" by rescinding as to the directors and officers

17  while refusing to repay the premiums paid by SONICblue.  (*Id.* at 5.)

18         Admiral contends that it was required to pay D&O defense costs during the bankruptcy

19  stay and was prevented by federal bankruptcy law from completing a rescission by restoring the

20  premiums to SONICblue.  According to Admiral, "the D&O defendants rejected the rescission

21  and SONICblue chose to remain silent," and Admiral thus could not "force adjudication of

22  whether grounds existed for rescission" because the bankruptcy court had already issued the stay

23  _____

24         [4]Old Republic makes a similar argument that rescission was barred by the bankruptcy stay
    because federal bankruptcy law preempts California law.  To the extent that Old Republic's
25  argument does not overlap with Admiral's and thus is not addressed in this Section, it is moot in
    light of the foregoing discussion.
26

27  Case No. C 09-4853
    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT, ETC.
28  (JFLC3)                                      11

1   pending resolution of the Underlying Action.  (Admiral's Reply ISO Cross-Mot. for Summ. J. 6.)

2        As discussed above, the Court concludes that rescission was effective upon the filing of

3   the Coverage Action.  Admiral has identified no authority for the proposition that the bankruptcy

4   stay altered the effective date of the rescission because it enjoined judicial confirmation and

5   enforcement of the rescission pending the subsequent resolution of the Underlying Action.

6        **3.     Effect of Third Party Rights**[5]

7        Admiral also contends that rescission could not have been effective upon the filing of the

8   Coverage Action because California law prohibits unilateral rescission, the D&Os are insureds

9   under the Primary Policy, and the D&Os claimed contractual rights independent of SONICblue.

10  Admiral claims that because rescission renders the policy unenforceable, "[e]ffectuating a

11  unilateral rescission merely through the filing of an insurer's declaratory relief action would

12  deprive the D&O Defendants of coverage without any judicial remedy."  (Admiral Opp'n to Pl.'s

13  MSJ 9.)

14       Plaintiff relies upon *R.J. Cardinal Co. v. Ritchie*, 218 Cal. App. 2d 124, 149 (Cal. Ct.

15  App. 1963), for the proposition that "[t]he principles governing rescission of third-party

16  beneficiary contracts are those applicable to the rescission of contracts generally."  Accordingly,

17  Plaintiff contends that the unilateral rescission effected by the filing of the Coverage Action is

18  not affected by the presence of the D&O third party beneficiaries of the policy.  Plaintiff also

19  argues that the directors and officers' settlement was "not the settlement of a rescission action,"

20  but, that rather, "[t]he parties settled and capped their exposure in connection with any

21  subsequent breach of contract claim by the directors and officers based on a theory of wrongful

22  rescission."  (Pl.'s Opp'n to Cross-Motions 10.)  He claims that Admiral's decision to enter into

23

24  _____

25       [5]Old Republic also makes this argument in its papers.  To the extent Old Republic's
    argument does not overlap with Admiral's and thus is not addressed in this Section, it is moot in

26  light of the foregoing discussion.

27  Case No. C 09-4853
    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT, ETC.

28  (JFLC3)                                             12

this settlement thus had no effect on "the finality of its rescission and its obligation to return the premiums." (*Id.*)

Admiral argues that Plaintiff fails to account for the fact that if rescission was completed upon the filing of the Coverage Action, "Admiral divested the D&O defendants of coverage by simply filing an Adversary complaint." (Admiral's Reply ISO Cross-MSJ 6.) Admiral contends that such a rescission is prejudicial to a third party's rights and thus forbidden under California law. (*Id.* (citing *Angle v. United States Fid. & Guar. Co.*, 201 Cal. App. 2d 758, 763 (Cal. Ct. App. 1962)).) According to Admiral, California law does not allow insurers to "terminate all its obligations under a policy to the detriment of its insureds by simply filing a complaint seeking rescission." (*Id.* at 7.)

However, California law protects the rights of third parties even while allowing rescission to be effected by filing suit. Judge Illston addressed this issue in *Atmel*:

> Plaintiff contends that allowing unilateral rescission without judicial approval would allow for an anomalous result: the carrier could delay defending just by alleging grounds for rescission, then when the insured files suit, it could tender rescission and vitiate not only its duty to defend but also the insured's declaratory relief and breach of contract duties. However, the [*Imperial Cas. & Indem. Co. v.*] *Sogomonian* [, 198 Cal.App.3d 169, 182, 243 Cal.Rptr. 639 (Cal. Ct. App. 1988)] court rejected a similar argument, stating "[o]ur conclusion here should not result in an assumption by insurers that policy liability can, with impunity, be avoided or delayed by assertion of a claim for rescission. That is a tactic which is fraught with peril. Where no valid ground for rescission exists, the threat or attempt to seek such relief may itself constitute (1) a breach of the covenant of good faith and fair dealing which is implied in the policy and/or (2) the commission of one or more of the unfair claims settlement practices proscribed by Insurance Code section 790.03, subdivision (h)." *Sogomonian*, 198 Cal.App.3d at 185 n. 16, 243 Cal.Rptr. 639. [FN2: *Sogomonian* pre-dated the California Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Insurance Companies*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 ([Cal.] 1988), which held that there is no private right of action to enforce Cal. Ins. Code § 790.03(h).]

*Atmel*, 426 F. Supp. at 1046. Following Judge Illston's reasoning, the directors and officers

1  would be left without recourse only if the rescission claim were valid.  Here, the Court found in

2  the Coverage Action that rescission was proper because of misrepresentations by the directors

3  and officers.  Had the Court found otherwise, the directors and officers may have had valid

4  claims against Admiral.

5      **4.**       **Equity**

6         Admiral next claims that making rescission effective as of the filing of the complaint in

7  the Coverage Action would be inequitable because it would allow Plaintiff "who has sat idly by

8  and observed the [Coverage and Underlying Actions]," to "reap the benefits of Admiral's hard-

9  won success" through recovery of "an undiminished refund of premium, with interest no less,"

10  thus leaving Admiral "holding the bag for monies that it paid under reservation of rights as well

11  as the foreseeable additional expenses it incurred as a direct result of the misrepresentations that

12  SONICblue perpetrated to induce the issuance of the [Primary] Policy."  (Admiral Opp'n to Pl.'s

13  MSJ 9.)

14         Much of Admiral's argument is moot in light of the final judgment in the Coverage

15  Action.  Given the Court's conclusion that rescission is proper, it is equitable to order the return

16  of both parties to their respective positions before they entered into the contract.

17      **5.**       **Judicial Estoppel and Laches**

18         Admiral contends that Plaintiff is precluded by the doctrine of judicial estoppel from

19  asserting that the Primary Policy was rescinded upon the filing of the complaint in the Coverage

20  Action.  It argues that SONICblue's former positions on the issue are demonstrated by the

21  following:

22        •     SONICblue's report to the Bankruptcy Court that the potential repayment
              of the premium was a contingency;

23        •     SONICblue's treatment of Admiral's request for rescission as contingent
              in its lawsuit against the Pillsbury, Winthrop, Shaw & Pittlman LLP

24             alleging that the nondisclosure was due to the law firm's negligence;
         •     SONICblue's refusal to adopt a position regarding the Coverage Action

25             when the Withdrawal of Reference was being considered;
         •     SONICblue's refusal to provide a declaration supporting Admiral's

26

27  Case No. C 09-4853
   ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
   SUMMARY JUDGMENT, ETC.

28  (JFLC3)               14

1    request for rescission.

2    (Admiral's Opp'n to Pl.'s MSJ10 (citation omitted).)[6]

3        Plaintiff argues that "the statements Admiral points to come nowhere near the kind of

4    assertion that would justify judicial estoppel." (Pl.'s Reply to Admiral's Opp'n 3.)  With respect

5    to his disclosures to the bankruptcy court, Plaintiff quotes the following language from his report:

6        The Chapter 11 Trustee and the Reconstituted Creditors' Committee may
         determine to take an active position in one or both litigations.  It is possible that
7        active participation in those litigations could result in additional funds being
         available to the Estates; however, the Plan Proponents are not in a position at the
8        time of the filing of the this First Amended Disclosure Statement to estimate the
         amount of any such additional funds.
9

10   (Pl.'s Supp. Request for Judicial Notice Ex. A at 41-42.)  Plaintiff submits that this statement is

11   insufficient to estop him from seeking restitution for premium payments made under the policy.

12       Similarly, Plaintiff asserts that he "is a at a loss to explain how his allegations concerning

13   Pillsbury's mishandling of SONICblue's D&O liability policies could amount to an admission

14   that the insurers' rescission was not complete at the time the Coverage Action was filed." (Pl.'s

15   Reply to Admiral's Opp'n 4.)  As for the remaining "inconsistencies," Plaintiff maintains that he

16   "had no obligation to take sides" in the Coverage Action, as his "job wasn't to favor one party's

17   position over another's in [the Coverage Action], but to maximize the return of the estate." (*Id.*)

18       Admiral's argument is without merit.  The fact that the directors and officers and the

19   Bondholders contested or continue to contest the validity of the rescission does not preclude

20

21       [6]In a footnote, Old Republic makes a similar argument under the doctrines of estoppel
     and laches:
22       In fact, had Plaintiff ever asserted before now that Old Republic was obligated to
         return premium immediately upon filing the Coverage Action, Old Republic
23       would not have settled the Coverage Action on the terms and conditions set forth
         in the settlement.  Accordingly, Plaintiff should be either precluded by the
24       application of the laches doctrine or estopped from arguing that Old Republic was
         obligated to pay the premium upon the mere filing of the Coverage Action.
25
26   (Old Republic's Opp'n & Cross-MSJ n.11.)

27   Case No. C 09-4853
     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT, ETC.
28   (JFLC3)                                    15

1   Plaintiff, who is a member of neither of those groups, from arguing that the filing of the

2   Coverage Action effected a rescission of the Primary Policy.  Nor does Plaintiff's position, or his

3   decision not to take a position, in the Coverage Action, to which he was not a party, so limit him

4   here.  Finally, neither Plaintiff's disclosures to the bankruptcy court nor his allegations against

5   his former counsel establish any legal position in conflict with the arguments he makes in the

6   instant motions.

7   **B.   Plaintiff's Entitlement to Repayment of Policy Premiums**

8          Plaintiff asserts that he is entitled to repayment of the policy premiums made by

9   SONICblue prior to the rescission.  Plaintiff is correct.  In *Sogomonian*, the court faced the

10  question of remedies in the event of the rescission of an insurance contract:

11         But what of the circumstance where the dispute between the insurer and the
           insured goes beyond the issue of coverage and results in the rescission of the
12         entire contract of insurance?
                "A contract is extinguished by rescission." (Civil Code § 1688.) The
13         consequence of rescission is not only the termination of further liability, but also
           the restoration of the parties to their former positions by requiring each to return
14         whatever consideration has been received.  (1 Witkin, Summary of Cal. Law (9th
           ed. 1987) Contracts, § 869, p. 781.)  Here, this would require the refund by
15         Imperial of any premiums and the repayment by the defendants of any proceeds
           advance which they may have received. The policy would be "extinguished" *ab*
16         *initio*, as though it had never existed.

17  *Sogomonian*, 198 Cal.App.3d at 184.

18         Applying this rule, Plaintiff is entitled to the premiums SONICblue paid on the Primary

19  Policy.  With respect to the Excess Policy, as discussed above, the 2007 settlement resolved any

20  disputes between Old Republic and the bankruptcy estate.

21  **C.   Discovery Required to Determine Defendants' Entitlement to Reimbursement of
         Defense Costs and Benefits Conferred Under the Policy**
22

23         For the same reason that Plaintiff is entitled to a return of premiums in light of the

24  rescission of the Primary Policy, Admiral is entitled to recover the benefits it conferred on

25  SONICblue under the policy.  In opposing Plaintiff's motion, Admiral asserts that if Plaintiff is

26

27  Case No. C 09-4853
    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT, ETC.
28  (JFLC3)                                            16

1   entitled to rescission, he must return all of the benefits SONICblue received under the Primary

2   Policy.  In particular, Admiral argues that it is entitled to the defense costs it incurred under the

3   Primary Policy for defense of SONICblue's directors and officers, because without the policy

4   SONICblue would have been required to indemnify these individuals pursuant to the company's

5   agreement with them.  Admiral claims that it paid $589,043.88 to defend SONICblue's directors

6   and officers.  (Admiral's Opp'n to Pl.'s MSJ 3.)  Admiral also contends that it is entitled to the

7   costs incurred in the Coverage Action because the action was necessitated by SONICblue's

8   fraud.  Admiral represents that those costs amounted to $295,389.35 in legal fees through

9   October 2009.  (*Id.*)

10       Plaintiff opposes Admiral's request for reimbursement on the basis that Admiral's offer

11  of proof, a declaration by a claims attorney for Admiral's managing underwriter, does not itemize

12  the defense costs, thus making it "impossible to tell what portion of those costs were incurred

13  prior to Admiral's rescission of the policy, and for which Admiral would therefore arguably be

14  entitled to a refund, and what portion were incurred after rescission, when Admiral had no further

15  obligation to defend."  (Pl.'s Reply to Admiral's Opp'n 5.)  Plaintiff cites *Atmel* for the

16  proposition that "[o]nce a rescission is effected, the insurer has no further liability, and no further

17  duty to defend."  (*Id.*)  Because Admiral has failed to provide sufficient evidence with respect to

18  its actual defense costs, Plaintiff contends that he is entitled to recovery of the full premium.  In

19  the alternative, Plaintiff requests the opportunity for further discovery on the issue.

20       Admiral contends that it is entitled to all of its defense costs because "[t]he policy was

21  still in effect when all payments were made to the D&O defendants.  Admiral did not voluntarily

22  pay the D&Os [sic] defense costs.  Admiral paid the defense costs based on its contractual

23  obligations under the [Primary] Policy."  (Admiral's Reply ISO MSJ 9.)  Admiral maintains that

24  Plaintiff's "cut off date" is not supported by the case law.  However, the only case it cites–*In re*

25  *Worldcom, Inc. Sec. Litig.*, 345 F. Supp. 2d 455 (S.D.N.Y. 2005)–involved an interpretation of

26

27  Case No. C 09-4853
    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
    SUMMARY JUDGMENT, ETC.

28  (JFLC3)                                      17

1    New York rather than California law.  Admiral provides no California authority inconsistent with

2    *Atmel*.

3          Plaintiff filed his motion for summary judgment shortly after filing his complaint.

4    Admiral asserts that it "has not had an opportunity to conduct discovery to obtain all evidence

5    proving the full extent of benefits SONICblue received so that a complete rescission can be

6    effectuated."  (Admiral's Opp'n to Pl.'s MSJ 14.)  Plaintiff does not oppose this argument.  The

7    Court concludes that the record does not contain a sufficient accounting of the costs incurred and

8    benefits conferred under the Primary Policy, including when and for what purpose defense costs

9    were incurred.  The parties may conduct discovery on these issues, and determination of the

10   motion will be deferred pending their resolution.

11   **D.      Judicial Estoppel**

12         Plaintiff contends that Defendants are judicially estopped from taking the position that

13   SONICblue is not entitled to recovery of its premiums because they asserted in the Coverage

14   Action that they were "ready, willing, and able to return to SONICblue" the policy premiums.

15   For the reasons discussed above, this argument is moot.  Admiral will be ordered to return the

16   premiums paid under the Primary Policy, less the benefits conferred upon SONICblue under the

17   policy**.**  Old Republic and SONICblue were relieved of their obligations under the Excess Policy

18   as a result of the 2007 settlement.

19                              **IV.  Conclusion**

20         For the reasons stated above, Old Republic's motion for summary judgment will be

21   granted; Plaintiff's motion for summary judgment will be granted in part, denied in part, and

22   deferred in part; and Admiral's motion to dismiss and motion for partial summary judgment will

23   be denied.  A case management conference is scheduled for July 16, 2010, at 10:30 A.M.

24

     DATED: May 19, 2010

25                                          _____
                                            JEREMY FOGEL

26                                          United States District Judge

27   Case No. C 09-4853
     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT, ETC.

28   (JFLC3)                                18