**E-Filed 3/4/11**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>SONIC BLUE INCORPORATED, a Delaware corporation; et al.,<br><br>Debtors.<br><br>————————————————<br><br>DENNIS J. CONNOLLY, Plan Administrator for SONICblue Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>ADMIRAL INSURANCE COMPANY and OLD REPUBLIC INSURANCE COMPANY,<br><br>Defendants. | District Court Case No. C 09-4853 JF<br><br>Chapter 11 Case No. 03-51775 MM (Case Nos. 03-51775 through 03-51778)<br>(Jointly Administered)<br><br>Adv. Proc. No. 09-05270<br><br>**ORDER[1] DENYING MOTION TO STAY PROCEEDINGS AND GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[re: docket nos. 64, 76] |

    Plaintiff Dennis J. Connolly, in his capacity as Plan Administrator for the estate of SONICblue, Inc., brought the instant action to recover premiums paid to Defendant Admiral Insurance Co. ("Admiral") on a directors' and officers' liability insurance policy (the "Policy")

---

[1] This disposition is not designated for publication in the official reporter.

Case No. C 09-4853
ORDER DENYING MOTION TO STAY PROCEEDINGS AND GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)                                              1

1 that Admiral later rescinded. On May 19, 2010, the Court determined that Plaintiff is entitled to
2 recover the premiums and that Admiral is entitled to recover benefits paid to SONICblue under
3 the Policy. The Court gave the parties an opportunity to engage in further discovery in order to
4 calculate the benefits Admiral is entitled to recover. Plaintiff now seeks summary judgment with
5 respect to the calculation of the amounts in question. Admiral asks the Court to stay the instant
6 proceeding pending a ruling by the Ninth Circuit on the related coverage action (the "Coverage
7 Action"). The Court has considered the moving papers and the oral argument presented at the
8 hearing on February 11, 2011. For the reasons discussed below, the Court will grant Plaintiff's
9 motion but stay execution of the judgment pending resolution of the appeal in the coverage
10 action.

## I. BACKGROUND[2]

SONICblue, a consumer electronics company, purchased the Policy from Admiral in 2002. In March 2003, SONICblue filed for bankruptcy. In April 2005, a group of SONICblue creditors (the "bondholders") filed a lawsuit (the "Underlying Action") against a group of SONICblue directors and officers (the "D&O Defendants"). The Bondholders sought up to $50 million in damages stemming from D&O Defendants' alleged fraud and breach of fiduciary duty.

The D&O Defendants removed the Bondholders' action to Bankruptcy Court and tendered the defense and indemnity of the action to Admiral. Admiral initially denied the claim for coverage, but it eventually agreed to advance defense costs.[3] On December 23, 2005,

---

[2] The Court's order of May 19, 2010, includes a more detailed examination of the factual background.

[3] The D&O Defendants claimed that Admiral decided to advance defense costs only when it learned of serious settlement discussions between the D&O Defendants and the Bondholders involving a possible assignment of the D&O Defendants to insurance coverage to the Bondholders. Reply in Support of Defendants' Motion to Stay, *In Re: SONICblue, Inc.*, No. 05-05624 MM (Bankr. N.D. Cal. June 16, 2006).

Admiral commenced an adversarial proceeding in the Bankruptcy Court (the "Coverage Action") against SONICblue and the D&O Defendants. Admiral sought to establish that it had no coverage obligation under the D&O Policy in connection with the Underlying Action. Alternatively, Admiral sought to reform or rescind the Policy, and it offered to deposit the premium for the Policy with the Bankruptcy Court. Admiral did not serve SONICblue with the summons and complaint.[4] On June 23, 2006, the Bankruptcy Court granted the D&O Defendants' request to stay the Coverage Action pending adjudication of the Underlying Action. Admiral continued to pay for the defense of the Underlying Action, ultimately expending a total of $589,043.88.[5]

In April 2007, the D&O Defendants reached a settlement with the Bondholder plaintiffs in the Underlying Action. As a part of the settlement, the Bondholders received an assignment of the D&O Defendants' rights under the Policy and thereafter substituted as parties in the Coverage Action. The Bondholders then removed the Coverage Action to this Court. The parties eventually filed cross-motions for summary judgment. On August 14, 2009, the Court granted Admiral's motion for summary judgment in part, concluding that Admiral was entitled to rescind the Policy because material facts were withheld during the application process. Following supplemental briefing with respect to whether rescission or reformation was the proper remedy, the Court entered a judgment rescinding the Policy on April 1, 2010. The Bondholders appealed, and Admiral cross-appealed seeking a declaration of no coverage or to reform the policy to exclude the risk of the Bondholder's lawsuit. The appeal and cross-appeal

---

[4] Admiral's counsel states in his declaration that Admiral did not serve SONICblue at the request of SONICblue's counsel. Madden Declaration, Ex. A. Admiral states that it was informed that the Trustee did not want to be a party to the Coverage Action in order to preserve the assets of the Estate. *Id.*

[5] Admiral calculates that it expended $121,257.63 litigating the Underlying Action prior to December 23, 2005 and $368,786.25 after that date. Madden Decl. ¶ 4, Exs. B & C.

are pending before the Ninth Circuit.  Although briefing is complete, no date for oral argument has been set.

Plaintiff filed the instant action for recovery of premiums on October 7, 2009.[6]  In December 2009, Plaintiff moved for summary judgment to establish that the Policy was rescinded as of the date Admiral filed the Coverage Action in 2005, rather than when this Court entered its judgment of rescission in 2009.  On May 19, 2010, the Court concluded that the Policy was rescinded in December 2005 when Admiral filed its adversary complaint seeking to rescind the Policy.

## II. DISCUSSION

**A.  Motion to Stay**

Admiral seeks a stay of the instant proceedings pending a decision by the Ninth Circuit in the Coverage Action, arguing that Plaintiff's claim for return of premiums will be rendered moot if the Ninth Circuit reverses the judgment on any of the grounds raised in the appeal or cross-appeal.

It is well established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time, effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  A court determining whether a stay is appropriate must weigh the competing interests affected by the decision, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398

---

[6] Plaintiff also brought suit against Old Republic Insurance Co., which issued an excess D&O policy to SONICblue.  Old Republic's motion for summary judgment was granted May 19, 2010.

Case No. C 09-4853
ORDER DENYING MOTION TO STAY PROCEEDINGS AND GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)                                                           4

1 F.3d 1098, 1109 (9th Cir. 2005).  The party seeking the stay "must make out a clear case of
2 hardship or inequity in being required to go forward, if there is even a fair possibility that the
3 stay for which he prays will work damage for someone else." *Landis*, 299 U.S. at 255.

4       Admiral contends that if it is forced to return premiums to SONICblue, which currently is
5 in bankruptcy, the money immediately will be passed on to SONICblue's creditors.  If the Ninth
6 Circuit later were to determine that rescission was not the appropriate remedy, Admiral would
7 have little hope of recovering the money from SONICblue's creditors.[7]

8       Admiral's concern is valid.  However, Plaintiff points out that he has a fiduciary
9 obligation to SONICblue's creditors to pursue their interests expeditiously.  He observes
10 correctly that the Court may stay the execution of any judgment without delaying the
11 determination of the amount owed by each party, which is the sole remaining issue in the case.
12 Indeed, as explained below, the present motion does not involve any factual disputes.
13 Adjudicating the motion will serve judicial economy and allow the funds owed to SONICblue's
14 creditors to accumulate at the post-judgment interest rate.

15 **B. Motion for Summary Judgment**

16       In its order dated May 29, 2010, the Court determined that Admiral's rescission of the
17 Policy was effective as of December 23, 2005.  The parties agree that Admiral received a net
18 premium of $675,000 from SONICblue (the gross premium of $750,000 less commissions).[8]
19 Declaration of Joanne Madden ¶ 3, Ex. A; Declaration of Serge Adam ¶ 6.  The parties also

---

[7] Admiral also raises the issue continuing litigations costs, including the cost of its planned appeal in the instant action, which could be avoided if the action is stayed.  However, this concern rings hollow, Admiral could have moved for a stay in this case before significant litigation costs had been incurred.  It did not seek the stay until after Plaintiff's earlier motion for summary judgment had been granted in part.

[8] Plaintiff initially estimated the net premium as $630,000, but it understandably accepts Admiral's figure of $675,000. Plaintiff's Reply at 2:5-15.

Case No. C 09-4853
ORDER DENYING MOTION TO STAY PROCEEDINGS AND GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)                                                    5

1  agree that Admiral expended $121,257.63 litigating the Underlying Action prior to December
2  23, 2005, Madden Decl. ¶ 4, Exs. B & C, and that Admiral is entitled to recover this amount.
3  Plaintiff does not contest Admiral's showing that it expended $368,786.25 litigating the
4  Underlying Action after December 23, 2005, *id.*, or that it expended $397,968.48 in analysis and
5  prosecution of the Coverage Action. Madden Decl. ¶¶ 5-6, Exs. D & E. The parties also agree
6  that interest should be calculated at the rate of seven percent beginning from the date of
7  rescission. *See* Defendant's Response at 7:6-10. The parties disagree only as to Admiral's
8  contention that it is entitled to recover the amounts it spend defending the policy after the date of
9  rescission and in prosecuting the Coverage Action.

10       Admiral contends that the Court's stated intention to "return both parties to their
11 respective positions before they entered the contract," requires that Admiral be permitted to
12 recover all costs that it incurred as a result of SONICblue's misrepresentation. However,
13 Admiral never has sought consequential damages. Rescission under the California Insurance
14 Code is not an exclusive remedy, and Admiral could have pursued a claim against SONICblue
15 for fraud or other torts*, see Century Surety Co. v. Crosy Insurance, Inc.*, 124 Cal. App. 4th 116
16 (2004) (holding that the California Insurance Code did not preclude an insurer's action against a
17 broker for misrepresentation because rescission was not the only remedy), but it elected not to do
18 so.

19       Admiral's request for reimbursement of its costs for defending the Underlying Action
20 presents a more difficult question. Admiral argues that it undertook the defense of the
21 Underlying Action under the terms of the Policy and that it is entitled to be made whole now that
22 the Policy has been rescinded. It contends that because California law requires a D&O insurer to
23 pay legal expenses as they are incurred, it had no choice even after filing the Coverage Action
24 but to continue to advance defense costs. It also points out that the Coverage Action asserted
25 five distinct alternative grounds for no coverage, but because the Coverage Action was stayed

27 Case No. C 09-4853
ORDER DENYING MOTION TO STAY PROCEEDINGS AND GRANTING MOTION FOR SUMMARY
JUDGMENT
28 (JFLC3)                                     6

1   pending resolution of the Underlying Action, Admiral had no way of knowing if or when it
2   would be relieved of its duty to defend, or on which grounds such relief would be based.

3         Plaintiff points out that the Court already has determined that Admiral's rescission of the
4   Policy was effective when Admiral filed its complaint for rescission. He argues that once the
5   Policy was rescinded Admiral had no contractual or legal obligation to continue to pay for a
6   defense of the Underlying Action and Admiral's continued payments thus were undertaken
7   voluntarily, recognizing that a court later could find that rescission was improper.

8         Although the Court understands the practical dilemma that Admiral faced, case law
9   supports Plaintiff's position. While Admiral claims that Policy required it to advance the costs
10  of defense incurred by SONICblue's officers and directors through resolution of the Underlying
11  action, as a matter of law the Policy no longer was operative after Admiral gave notice of
12  rescission. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) ("When a party
13  gives notice of rescission, it has effected rescission, and any subsequent judicial proceedings are
14  for the purpose of confirming and enforcing that rescission."). The precise question of whether
15  "an insurer is liable for unreimbursed defense costs unless and until it is adjudicated that the
16  policy is rescinded" was addressed in *Atmel v. St. Paul Fire & Marine*, 426 F. Supp. 2d 1039,
17  1043 (N.D. Cal. 2005), which the Court cited extensively in its previous order. *Atmel* holds that
18  under California law, there simply is "no duty to defend if an insurer has unilaterally rescinded a
19  policy unless and until the rescission has been set aside." *Id.* at 1044.

20        Admiral contends that because it asserted numerous theories for no coverage in addition
21  to seeking rescission, it was obligated to continue payment of defense costs until it became clear
22  which if any of these theories would be accepted by the Court. Admiral compares the situation
23  to that of a liability insurer obligated to defend a "mixed" action in which some claims
24  potentially are covered and others are not. It reliaes upon *Buss v. Superior Court*, 16 Cal. 4th 35,
25  57-58 (1997), as requiring an insurer to defend the entire action while retaining the right to seek

reimbursement for defense costs expended on non-covered claims. However, a more recent opinion of the California Court of Appeal articulates the distinction between reimbursement sought in such a mixed action claim and reimbursement sought after rescission: "[A] rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage . . . . Unlike a *Buss* mixed action, in this case [the insurer's] duty to defend was nonexistent from the inception." *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins.*, 156 Cal. App. 4th 1259, 1272 (2007) (internal quotation marks and citation removed); *see also Atmel*, 426 F. Supp. 2d at 1043-1044.

Finally, at oral argument, Admiral argued that, in light of the Bankruptcy Court's order of June 23, 2006, staying the Coverage Action pending resolution of the Underlying Action, it would be inequitable to deprive Admiral of reimbursement for its subsequent defense of the Underlying Action. However, the stay was not issued until six months after the date of rescission. By then Admiral already had decided to defend the Underlying Action until it was relieved of any risk that its rescission was not valid. In addition, as the D&O Defendants argued in their brief before the Bankruptcy Court, Admiral had other incentives for defending the Underlying Action. *See supra* note 3.

It is true that having filed a complaint claiming rescission of the Policy, Admiral had to decide whether to refuse to advance defense costs in the Underlying Action, which would subject it to potential liability if the Court later found that it did not have proper grounds for rescission, or to continue to pay such costs despite having no legal obligation to do so. However, this dilemma was not appreciably different from the one faced by the insurer in *Atmel* or any of the other cases in which an insurer exercised its right of rescission. Indeed, any party that repudiates a contract faces potential liability if the grounds for doing so later are found to be improper. Litigation frequently involves balancing the risks and rewards of alternative courses of action and insurance companies are better positioned than most to evaluate such choices.

### III. ORDER

Good cause therefor appearing, the Court concludes that Plaintiff is entitled to payment of $675,000, representing the net premium received by Admiral from SONICblue, less $121,257.63 for the defense litigation costs expended by Admiral prior to rescission of the contract, plus pre-judgment interest at the rate of seven percent. The enforcement of the judgment shall be stayed pending resolution of the pending appeal in the Coverage Action. The parties shall meet and confer to provide an accurate calculation of the total amount of pre-judgment interest.

IT IS SO ORDERED.

DATED: March 4, 2011

_____
JEREMY FOGEL
United States District Judge